IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STRYKER SALES CORPORATION, a Michigan corporation,<br><br>       Plaintiff,<br><br>  v.<br><br>JOHNNY MCNANY, an individual; and INTEGRA LIFESCIENCES CORPORATION, a Delaware corporation,,<br><br>       Defendants. | Case No. 15-cv-01110-JTN-ESC<br><br>Hon. Janet T. Neff |

## DEFENDANTS' BRIEF ON THE APPLICABLE LAW

On the Brief:

Thomas F. Hurka
Stephanie L. Sweitzer (P66376)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
+1.312.324.1000
thurka@morganlewis.com
ssweitzer@morganlewis.com

Sandra J. Densham
PLUNKETT COONEY
333 Bridge Street, N.W., Suite 530
Grand Rapids, MI  49504
616-752-4627
sdensham@plunkettcooney.com

*Attorneys for Defendants*

I.      INTRODUCTION

Defendant Johnny McNany ("McNany"), a California resident, worked for Plaintiff Stryker Sales Corporation ("Stryker") in California for nine years before terminating his at-will employment and joining competitor Integra LifeSciences Corporation ("Integra") in California. Stryker alleges contract and tort claims premised on a July 25, 2006 Sales Representative Confidentiality, Intellectual Property, and Non-Competition Agreement (the "Agreement") between McNany and Stryker. The Agreement contains broad covenants not to compete, which are void in California per California Business and Professions Code Section 16600.

Section 16600 embodies a longstanding, fundamental policy of California. "At least since 1872, a non-competition agreement has been void unless specifically authorized by" statutory exceptions. *Bosley Medical Group v. Abramson*, 161 Cal. App. 3d 284, 288 (1984). Courts have consistently recognized Section 16600's crucial role in the California economy:

> In the years since its original enactment . . . our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. The law protects Californians and ensures "that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." It protects "the important legal right of persons to engage in business and occupations of their choosing."

*Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal. 2008) (internal citations omitted). Californians firmly maintain Section 16600's importance to their state's culture of innovation and attribute much of the success of California's "Silicon Valley" to the "cultural and legal foundation that makes leaving [technology companies] to start or work for a potential competitor the expectation, not the exception." Greg Gretsch, *Where Innovation Isn't Hurt by Noncompetes*, Wall St. J. Accelerators Blog (Sept. 13, 2013, 4:28 p.m.) http://blogs.wsj.com/accelerators/2013/09/13/greg-gretsch-where-innovation-isnt-hurt-by-noncompetes/. Application of Michigan law to the instant dispute, which concerns the ability of

a California employee to compete in California, would violate California's entrenched public policy in favor of employee mobility and open competition. Stryker should not be allowed to contract-around this fundamental policy through a choice-of-law clause any more than it could contract-around California's minimum wage or income tax laws.

## II.     FACTUAL BACKGROUND

McNany is a lifelong California citizen who lives in San Jose, California. Declaration of Johnny McNany ("McNany Decl.") ¶ 2, attached as Exhibit 1; *see also* Dkt. 1 at ¶ 7. McNany worked for Stryker in the Bay Area South Territory, which included San Jose, Santa Clara and Palo Alto, from July 2006 until he resigned on September 15, 2015. *Id.* ¶ 4; *see also* Dkt. 1 at ¶¶ 7, 27. All of McNany's customers and prospective customers were located in that territory in California, including Stanford University Hospital and Lucile Packard Children's Hospital. *Id*.

Stryker required McNany to sign the Agreement as a condition of his employment. McNany Decl. ¶ 5; *see also* Dkt. 1 at ¶ 38, Exhibit A. Stryker sent the Agreement to McNany in California via email. *Id.* ¶ 6. McNany signed the Agreement at his home in California and returned it to Stryker via email. *Id.* The employment relationship between McNany and Stryker was expressly at-will. Agreement, § 5.3; *see* Dkt. 1, Exhibit A.

The Agreement includes several one-sided covenants that purport to preclude McNany from competing with Stryker in California after the termination of his employment. Section 4.2 purports to prohibit McNany from working for any company that competes with Stryker in the "Sales Territory" for which he was responsible during the last year of his employment for one year following termination of his employment. That "Sales Territory" lies entirely in California. Section 4.1 purports to prohibit McNany for one year from competing for business from any of Stryker's actual or prospective customers during the last three years of McNany's employment with Stryker, or their affiliates, in California. *See* Dkt. 1, Exhibit A. Those customers are all in

California. *Id.* at ¶¶ 2-3, 31-37.

On September 15, 2015, McNany exercised his right to terminate his "at will" employment with Stryker. McNany Decl. ¶ 9; *see also* Dkt. 1 at ¶ 26. On September 28, 2015, McNany commenced employment with Integra. *Id*.

### III.   ARGUMENT

#### A.   California Law Applies to All of Stryker's Claims.

Federal courts sitting in diversity "apply the choice of law rules of the forum state to determine which state's laws govern the dispute." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013). When parties agree to a choice-of-law provision and there is a conflict-of-law dispute, Michigan has adopted "the approach set forth in the Restatement (Second) of Conflict of Laws." *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). Under the Restatement, a contractual choice of law provision must be disregarded if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Johnson*, 191 F.3d at 739 (*citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1988)); *see also Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich 2000).

##### 1.   *California Law Would Apply in the Absence of the Choice of Law Provision*

Pursuant to the Restatement (Second) of Conflicts of Laws § 188, the law that applies to a particular case where the parties have not made an effective selection of law is determined by examining the contacts each potentially applicable state has to the dispute, including: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the

subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See MoneyForLawsuits V LP v. Rowe*, No. 4:10-CV-11537, 2012 WL 1068171, at *8 (E.D. Mich. Jan. 23, 2012). In the instant case, the only such contact in favor of applying Michigan law is that Stryker is incorporated and headquartered in Michigan. All other contacts implicate California. McNany executed the Agreement in California; California was the place of performance of the Agreement; all of the allegedly impermissible conduct and potential damages are centered in California; and McNany is and was at all relevant times a California resident working in California.

2.   *Michigan Law Is Contrary to California's Fundamental Public Policy*

Post-employment covenants not to compete are unenforceable in California per California Bus. & Prof. Code Section 16600, which renders "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind … void," except for certain statutory exceptions not at issue here. *Edwards*, 189 P.3d at 290-91. California courts apply Section 16600 to invalidate covenants that prevent an employee from doing business with a former employer's past or prospective clients. *Id.* at 291-92. California law also prohibits employers from requiring such agreements in the state. Cal. Labor Code § 432.5.

The policy underlying Section 16600 is considered "fundamental." *Edwards,* 189 P.3d at 290-91. "Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment of their choice." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th. 564, 575 (2009). "The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Edwards,* 189 P.3d at 291; *see also Continental Car-Na-Var Corp. v. Moseley*, 148 P.2d 9, 13 (Cal. 1944). Courts outside California have frequently recognized these strong public policies. *See, e.g., Contech Constr. Prods. v. Blumenstein*, No. 1:11cv878, 2012 WL 2871425, at *11

(S.D. Ohio July 12, 2012) ("California's long history of ensuring its employees' right to pursue lawful employment demonstrates a powerful public policy."); *LKQ Corp. v. Fengler*, No. 12-cv-2741, 2012 WL 1405774, at *4 (N.D. Ill. Apr. 23, 2012) ("California has a strong and long-standing public policy that favors open competition over the common law 'rule of reasonableness' governing contractual restraints on the practice of a profession, business, or trade"); *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 231 (D. Conn. 2003) (Connecticut law permitting "reasonable" restrictive covenants "collides with California's blanket policy against these kinds of restrictive covenants"). Application of Michigan law, which permits enforcement of noncompetition agreements deemed "reasonable" under M.C.L.A. 445.774a, is thus contrary to California's "fundamental," "strong" and "long-standing" public policy in favor of open competition and employee mobility, embodied in Section 16600.

        3.    *California Has a Materially Greater Interest in the Determination of McNany's Ability to Compete in California*

In this case, California's interest is "materially greater" than that of Michigan. Under California law, "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers." *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900 (1998) (citation omitted). Moreover, the claims center in California. Stryker availed itself of California's legal protections and sought to take advantage of California's economy (which Californians believe has been buoyed significantly by the policy choices embodied in Section 16600) by employing McNany in California to solicit California businesses. Dkt. 1 at ¶¶ 7, 27. The allegedly impermissible conduct and potential damages are centered in California. The alleged tortious interference and unfair competition occurred in California; any purported injuries to Stryker occurred (or will occur) in California; Integra and Stryker conduct their business and are competing for customers in California; and

Integra's relationship with McNany is centered in California.[1] *See id.* at ¶¶ 62-63. Thus, California has a strong interest in enforcing its laws to protect California-resident employees and businesses in California to "compete effectively for the most talented, skilled, employees in their industries." *Application Grp.,* 61 Cal. App. 4th at 900-01 (finding contractual choice of law provision unenforceable, and that California law applied, where neither the employee, nor her former employer, were located in California, but the employee's new employer was California based). Numerous courts around the country have recognized California's materially greater interest in protecting the rights of its employees to compete and found that California's Section 16600 trumps an employers' choice-of-law selection clauses where the employee at issue lived and worked in California. *See Mail Boxes Etc., USA, Inc. v. Considine*, 229 F.3d 1158 at *1 (9th Cir. 2000) (table opinion) ("[I]t is a fundamental policy of California to find [covenants not to compete] unenforceable"); *Armed Forces Comm'ns, Inc. v. Cass Comm'ns, Inc.*, 60 F.3d 832 at *1–*2 (9th Cir. July 5, 1995) (table opinion); *Ascension Ins. Holdings, LLC v. Underwood*, C.A. No. 9897-VCG, 2015 WL 356002, at *5 (Del. Ch. Jan. 28, 2015) ("California's interest in preventing the enforcement of a covenant not to compete against a California resident employed and seeking to compete largely in California . . . is greater than Delaware's general, though profound, interest in vindicating freedom of contract"); *Lifestyle Improvement Ctrs., LLC v. East Bay Health, LLC*, No. 2:13-cv-735, 2013 WL 5564144, at *8-10 (S.D. Ohio Oct. 7, 2013); *LKQ Corp.*, 2012 WL 1405774, at *5; *Contech Constr. Prods.*, 2012 WL 2871425, at *14 (S.D. Ohio July 12, 2012); *Digicore v. E Digital Corp.*, No. 2:06-CV-437 CW, 2009 WL 706888, at *6-8 (D. Utah, Mar. 13, 2009); *United Rentals, Inc.*, 296 F. Supp. 2d at 233; *Production Resource*

---

[1] Indeed, during his employment with Stryker, McNany's contacts with the State of Michigan were limited to his initial training, occasional email correspondence and telephone calls, and attendance at Stryker's mid-year sales representative meeting, which took place in Michigan on a few occasions. McNany Decl. ¶ 8.

*Group, L.L.C. v. Oberman*, No. 03 Civ. 5366(JGK), 2003 WL 22350939, at *8-10 (S.D.N.Y. Aug. 27, 2003); *Roll Sys. v. Shupe*, No. 97-12689-GAO, 1998 U.S. Dist. LEXIS 3142 (D. Mass. Jan. 22, 1998); *In re International Endoscope Inc.*, Bankr. No. 85-1033K, Adv. No. 85-528, Misc. No. 86-118, 1986 WL 11613, at *5 (E.D. Penn. Oct. 14, 1986); *Aware, Inc. v. Ramirez-Mireles*, 13 Mass. L. Rptr. 257, at *2 (Mass. Sup. Ct. 2001); *Aon Corp. v. Alliant Ins. Servs., Inc.*, No. 650700/2014, slip op. 31735(U), 2014 WL 2990393 (N.Y. Sup. Ct. June 26, 2014). [2]

### B. Prior Michigan District Court Cases Holding California Does Not Have a Fundamental Policy Interest in Employee Mobility Should Not Control

Stryker will no doubt ask the Court to disregard California's strong public policy favoring employee mobility and competition by relying on the erroneous and out-of-date 1999 decision, *Lowry Computer Products, Inc. v. Head*, 948 F. Supp. 1111 (E.D. Mich. 1997). *Lowry* incorrectly concluded California does not have a fundamental policy against non-competition clauses because of a single sentence in a 1965 California case that said Section 16600 "invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment . . . unless they are necessary to protect the employer's trade secrets." *Id.* (citing *Muggill v. Reuben H. Donnelley Corp.*, 398 P.2d 147, 149 (Cal. 1965)). *Lowry* then erroneously concluded that because the defendant in that case had apparently misappropriated her former employer's trade secrets or confidential information, California would have allowed enforcement of the noncompetition clauses at issue. *Id.* at 1115.

To the extent this interpretation of California's Section 16600 was ever correct, it has been clearly disavowed by more recent California cases clarifying that there is no "trade secrets"

---

[2] If this Court were to conclude Michigan law applies here, it would be providing a road map for employers who employ individuals in California to circumvent the protections of Section 16600, rendering it a nullity. Employers nationwide could evade California law. Query whether employers similarly could deny California employees other statutory protections, *e.g.*, California non-discrimination and wage and hour laws, by including a choice of law provision.

exception allowing the enforcement of otherwise-invalid noncompete clauses.  First, no statutory "trade secrets exception" to Section 16600 exists.  It is not set forth in the statute, as required to be a valid exception to Section 16600 per Section 16600's plain language.  *See also Edwards*, 189 P.3d at 297 ("Noncompetition agreements are invalid under Section 16600 in California even if narrowly drawn, unless they fall within the applicable statutory exceptions").  Nor does allowing the enforcement of a noncompete clause add anything to California's Uniform Trade Secrets Act, Civ. Code § 3426, *et seq.* ("CUTSA"), which already allows for actions and provides greater remedies for trade secret misappropriation.

California cases post-*Edwards* have confirmed that no blanket "trade secrets exception" exists.  In *Retirement Group v. Galante*, 176 Cal. App. 4th 1226, 1239 (2009) ["*Galante*"], a California court of appeal noted that, even though the Court in *Edwards* did not address the issue, "*Edwards* did not *approve* the enforcement of noncompetition clauses whenever the employer showed the employee had access to information purporting to be trade secrets."  The *Galante* court interpreted the purported "trade secrets exception" as follows:

> [S]ection 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act and/or the Unfair Competition Law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer. **Viewed in this light, therefore, the conduct is enjoinable *not* because it falls within a judicially-created "exception" to section 16600's ban on contractual nonsolicitation clauses, but is instead enjoinable because it is wrongful independent of any contractual undertaking.**

*Id.* at 1238 (emphasis added). *See also Dowell,* 179 Cal.App.4th at 577 ("[W]e doubt the continued viability of the common law trade secret exception to covenants not to compete").

Thus, although a former employee may be enjoined under California law from using his or her former employer's trade secrets, a non-compete provision does not become enforceable under California law just because trade secrets are involved.[3]

Nor would enforcement of a post-termination noncompete clause just because trade secrets were also at issue serve any purpose. Michigan's legal interests in the protection of its businesses' legitimate intellectual property rights are already protected under California law. California law allows the enforcement of contractual provisions related to the protection of confidential information and other intellectual property, which are both present in McNany's Agreement with Stryker. Agreement, §§ 2.1-2.5; *see* Dkt. 1, Exhibit A. California also has a strong trade secrets law, laws against unfair competition, and torts for intentional interference with contract and prospective economic advantage, all of which Stryker can avail itself for protection. In short, if Stryker has a legitimate claim for misappropriation of its confidential

---

[3] Although some courts in other jurisdictions have rejected application of California law to invalidate a choice-of-law provision that would likely run afoul of Section 16600, those decisions generally discount or misinterpret California's strong public policy interest in employee mobility, are against the great weight of California authority, and should not be followed. In particular, several such decisions are factually distinguishable from the situation here, where McNany's employment was entirely localized in California. *See, e.g.*, *Marsh USA v. Hamby*, 28 Misc. 3d 1214(A) (N.Y. Sup. Ct. 2010) (both the former and present employer were based in New York and the clients at issue had a "global presence"); *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2014) (former employee was responsible for brands across North America and worldwide, and thus his work was not "entirely 'centered' in California"); *Machado-Miller v. Mersereau*, 180 Or. App. 886 (Or. Ct. App. 2002) (employee received all instructions, paychecks, and commissions from Oregon; analysis of Oregon public policy has also been recognized as "dictum" and seemingly contrary to the plain language of Oregon's statute (*See Konecranes, Inc. v. Sinclair*, 340 F. Supp. 2d 1126, 1130, fn. 2 (D. Or. 2007)). Others rely on inapplicable state policies or inaccurate interpretations of California law. *See, e.g.*, *MCS Servs. v. Coronel*, 2008 Md. Cir. Ct. LEXIS 3 (2008) (relying in part on a Maryland policy that "absent proof of fraud, a party has a duty to read a contract before he signs it and, even if he signs it without reading it, he remains bound by its terms"); *see also Arkley v. Aon Risk Servs. Cos., Inc.*, No. CV 12-1966 DSF (RZx), 2012 WL 2674980, at *5, fn. 2 (C.D. Cal. June 13, 2012) (finding *MCS Servs.* "inapposite" on this basis)); *Ayco Co. v. Frisch*, 795 F. Supp. 2d 193 (N.D.N.Y. 2011) (relying on an improper analysis of California's purported "trade secrets exception" (*see* Part III.B, *infra*)).

information or a trade secret, it has a plethora of other claims under California law.

Finally, even if the purported "trade secrets exception" were viable, it would not apply here. *Lowry* erroneously considered only whether trade secrets were "at issue" in the *dispute*. But when California courts have considered the purported exception, they have looked to the non-compete provision and the agreement as a whole to determine if the *provision* is "narrowly tailored or carefully limited to the protection of trade secrets." *See Dowell,* 179 Cal. App. 4th at 578-79. A covenant not to compete is unnecessary to protect confidential information where other provisions in an agreement, such as the confidentiality provisions in McNany's Agreement with Stryker, serve that purpose. *See D'sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 935 (2000).

Because *Lowry* relied on an inaccurate and outdated interpretation of the purported "trade secrets exception" to Section 16600, its reasoning is premised on an inaccurate understanding of California law. Nor would the "trade secrets exception," if it existed, be applicable to this case, where the purported "exception" would still fail to save the covenants at issue. To the extent other decisions have relied on *Lowry* on this point (*e.g., Stryker Corp. v. Ridgeway*, Nos. 1:13-CV-1066; 1:14-CV-889, 2015 WL 5682317, at *5 (W.D. Mich. Sept. 21, 2015))[4], those opinions fail to provide persuasive authority. Instead, the Court should consider the question of whether California's Section 16600 should apply to this dispute *de novo* and on its own merits – an analysis which can yield only one result: that California law should apply to this dispute.

## IV.     CONCLUSION

WHEREFORE, Defendants respectfully submit that California law, and not Michigan law, should apply to the Agreement notwithstanding the Michigan choice of law provision.

---

[4] *Ridgeway* also relied on the distinguishing fact that the law of Louisiana, where the employee resided, permits noncompetition clauses within a specified region for a limited period after termination to hold that applying Michigan law would not violate any fundamental policy of Louisiana. *Ridgeway*, 2015 WL 5682317, at *5-6.

| | |
|---|---|
| Dated: January 19, 2016 | Respectfully submitted, |
| | JOHNNY MCNANY and INTEGRA LIFESCIENCES CORPORATION |
| | By: */s/ Stephanie L. Sweitzer*<br>One of Their Attorneys |
| | Thomas F. Hurka<br>Stephanie L. Sweitzer (P66376)<br>MORGAN, LEWIS & BOCKIUS LLP<br>77 West Wacker Drive<br>Chicago, IL  60601-5094<br>+1.312.324.1000<br>thurka@morganlewis.com<br>ssweitzer@morganlewis.com |
| | Sandra J. Densham<br>PLUNKETT COONEY<br>333 Bridge Street, N.W., Suite 530<br>Grand Rapids, MI  49504<br>616-752-4627<br>sdensham@plunkettcooney.com |
| | *Attorneys for Defendants* |