**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| STRYKER SALES CORPORATION, a Michigan corporation, | |
| Plaintiff, | |
| v. | Case No. 15-cv-01110-JTN-ESC |
| JOHNNY MCNANY, an individual; and INTEGRA LIFESCIENCES CORPORATION, a Delaware corporation, | Hon. Janet T. Neff |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

## I.     INTRODUCTION

This lawsuit is nothing more than an attempt by Stryker Sales Corporation ("Stryker") – a company that reported approximately $9.7 billion in sales in 2014[1] and is the proverbial "big fish" in the medical technology industry – to hinder a smaller company from competing with it and prevent a former employee from making a living; here, by attempting to circumvent California's long-established, statutory public policy barring enforcement of covenants not to compete. Regardless of whether California or Michigan law is applied, Stryker's claims and the pending motion for preliminary injunction are based on rampant speculation, conjecture and baseless allegations. Such a dearth of evidence cannot, and should not, support the issuance of the extraordinary relief of a preliminary injunction.

---

[1] Stryker Corporation 2014 Form 10-K, available at
https://www.sec.gov/Archives/edgar/data/310764/000031076415000022/syk10k12312014.htm.

## II.    BACKGROUND

### A.    Summary of Relevant Facts

Johnny McNany ("McNany") is a lifelong California resident who, upon graduating from California State University, Chico in 2003, began his career in his home state as a sales representative.  Dkt. 32-1 at ¶ 2.  Three years later, he landed a position as a sales representative with Stryker in its Bay Area South Territory in California.  *Id.* at ¶ 4.  After over nine years as an at-will employee with Stryker, on September 15, 2015, McNany resigned his employment and, on September 28, 2015, he joined Integra LifeSciences Corporation ("Integra") as a sales representative in its San Francisco 2 Territory.  *Id.* at ¶ 9.

Although his title is Sales Representative for Integra's Neuro Sciences division, McNany's role is not limited to sales.  Rather, McNany spends the majority of his time providing support services for existing Integra customers in his sales territory who own and use Integra Neuro Sciences products, including providing training to doctors and staff, answering questions about the equipment as they arise, sitting in on surgeries when requested by a doctor to be available to provide immediate support if needed, and making simple repairs and coordinating the completion of more complicated repairs for the products.  McNany Decl. ¶ 2, attached hereto as Exhibit A.

When McNany began working for Integra, certain current and prospective customers that were within his former Stryker territory were existing Integra customers who owned and used Integra products.  *Id.* ¶ 3.  About ten hospitals in Integra's San Francisco 2 Territory currently own CUSA machines, including Stanford Medical Center, which owns six.  *Id.*  These hospitals and others, including Stanford Medical Center, also own and use various other Integra Neuro Sciences products, such as the Mayfield Headrest and various dural sealants that are frequently utilized in highly critical neurosurgical and spinal procedures, that do not compete with Stryker

NSE products. *Id.* Since beginning his employment with Integra, McNany has provided support services to these existing Integra customers in connection with their existing Integra products, including Stanford University Hospital ("Stanford Hospital") and Lucile Packard Children's Hospital ("Stanford Children's"). *Id.* ¶ 4.

Contrary to Stryker's assertions otherwise (*see* Dkt. 24 at 10-11), upon joining Integra, McNany went through the appropriate credentialing process for all hospitals in his territory before entering any of the facilities as an Integra employee. McNany Decl. ¶ 5. On one occasion, early in his tenure with Integra, McNany signed into Stanford Hospital's computerized check-in system, Vendormate, with his Integra credentials, but when he signed his name on the vendor dry-erase board in the hospital's surgical area, out of habit due to his more than nine years as a Stryker employee, he wrote "Stryker" next to his name. *Id.* ¶ 6. Matthew Evans, a Stryker sales representative assigned to Stanford Hospital for a period of time after McNany joined Integra, pointed out the error and the two laughed about it, with McNany posing for a photo. *Id.* ¶ 6. McNany did not need the Stryker name to gain access to the hospital or its staff.

Because Stanford Children's already owns several older CUSA machines and is considering upgrading or replacing them, McNany offered to place a newer CUSA model in the hospital for doctors to demo and evaluate the best product choice for their and their patients' needs. *Id.* ¶ 7. In addition to providing his support services for existing Integra products, McNany also provided training and support in connection with the CUSA demo at Stanford Children's. *Id*.

### B.    Summary of Relevant Proceedings to Date

Stryker filed its Complaint against both McNany and Integra on October 28, 2015, asserting a breach of contract claim against McNany and various tort claims against both Defendants. *See* Dkt. 1. Each of Stryker's claims is premised on the enforceability of the Sales

Representative Confidentiality, Intellectual Property, and Non-Competition Agreement (the "Agreement") between McNany and Stryker, and Stryker's allegations that McNany is violating the restrictive covenants contained in the Agreement through his employment with Integra. Curiously, despite having knowledge of McNany's contact with Stanford Hospital, Stryker elected not to file a motion for temporary restraining order ("TRO") or preliminary injunction at that time, but did file a motion for expedited discovery. *See* Dkt. 5.

On November 19, 2015, pursuant to this Court's Civil Guidelines, Defendants filed a pre-motion conference request, asking the Court's permission to file a motion to dismiss Stryker's claims against them under Fed. R. Civ. P. 12(b)(6). *See* Dkt. 11. It is Defendants' position that under Michigan's conflict of law rules, California law trumps the Agreement's Michigan choice of law provision. Because each of Stryker's claims is premised on the Agreement, which is invalid under California law, the Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety. *Id.* Alternatively, Defendants argued that transfer to the U.S. District Court for the Northern District of California is appropriate under 28 U.S.C. § 1404(a). *Id.*

During a status hearing held on December 14, 2015, the Court denied both Stryker's motion for expedited discovery and Defendants' pre-motion conference request as premature. *See* Dkt. 18. Instead, the Court treated the case as any other, ordering Defendants to answer Stryker's Complaint by December 28, 2015, and the parties to attend a Rule 16 scheduling conference on January 14, 2016. *Id.*; *see also* Dkt. 17.

Despite Stryker's knowledge of McNany's contact with Stanford Medical Center dating back to at least October 2015, Stryker waited until the eve of the Rule 16 scheduling conference – more than ten (10) weeks after filing its Complaint – to file an Emergency Motion for

Temporary Restraining Order and Preliminary Injunction.  *See* Dkt. 23.  Although Defendants, parties to the instant lawsuit, received notice of Stryker's motion via the Court's electronic filing system and were prepared to argue the merits of the motion, when the parties appeared before the Court on January 14 for the Rule 16 scheduling conference, the Court denied Defendants' request to present argument in opposition to the motion or otherwise file a response.  Instead, the Court stated that it was granting the motion for TRO "without notice, which is what [Stryker] asked for under Rule 65," without any discussion of the Court's findings as to the showing Stryker made to warrant such extraordinary relief.[2]  *See* January 14, 2016 Hearing Transcript at p. 22, attached hereto as Exhibit B; *see also* Dkt. 27.  The Court set a preliminary injunction hearing for January 28, 2016, and ultimately agreed to permit the parties to brief the threshold issue of whether California or Michigan law applies to the dispute in advance of the preliminary injunction hearing.  *See* Dkt. 27.  On January 15, 2016, the Court entered the TRO against Defendants.  *See* Dkt. 30.

## III.    ARGUMENT

### A.    Standard of Review

It is well established that although the grant of a preliminary injunction or temporary restraining order rests within the sound discretion of the trial court, it is an extraordinary judicial power to be used only in the most compelling cases.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. E.F. Hutton & Co., Inc.*, 403 F. Supp. 336, 339 (E.D. Mich. 1975); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke*

---

[2] Stryker's motion was not couched as one without notice and did not include the prerequisites required by Rule 65 for an *ex parte* motion for TRO.  *See* Fed. R. Civ. P. 65(b)(1) ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.").  In fact, Stryker specifically stated in its motion that "[c]ontemporaneous with the filing of this Motion, Stryker provided notice to Defendants."  Dkt. 23 at 2.

*Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).  The purpose of both a preliminary injunction and a temporary restraining order is to preserve the status quo until the Court can make a decision on the merits.  *Neveux v. Webcraft Technologies, Inc.*, 921 F. Supp. 1568, 1571 (E.D. Mich. 1996).  "Like all equitable remedies, a preliminary injunction will not issue unless the right to relief is clear."  *Id.*  The party seeking a preliminary injunction bears the burden of establishing the basis for the requested injunctive relief.[3]  *Merrill Lynch*, *supra* at 339.  Further, "[a]t the preliminary injunction stage, a district court is not required to resolve doubtful questions of law or disputed questions of fact."  *Neveux*, *supra*, at 1571.

To determine whether a preliminary injunction and/or temporary restraining order should issue, Stryker is obligated to meet four crucial prerequisites by offering evidence to show:  (1) a substantial likelihood that it will prevail on the merits of its claims; (2) irreparable injury would result if injunctive relief is denied; (3) the injury Stryker would suffer without an injunction outweighs the damage to Defendants if injunctive relief is granted; and (4) the public interest will be served by an injunction.  *Id.*; *see also Overstreet v. Lexington-Fayette Urban Cnty. Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2008).  Stryker has not offered proof to satisfy *any* of these four factors, nor can it.

---

[3] The Court's January 14, 2016 Order directs trial counsel to "be prepared to argue why a preliminary injunction should not be issued for the pendency of this case."  Dkt. 27 at 2.  This Court's Order improperly shifts the burden to Defendants to present evidence that a preliminary injunction should *not* be entered, when the burden under the applicable test rests at all times with *Stryker* to present evidence as to why a preliminary injunction – an extreme remedy – *should* be entered.

**B.    There Is No Likelihood of Success On the Merits Under California Law.**

    **1.    The Non-Solicitation and Non-Competition Provisions in the Agreement Are Void Under California Law.**

As detailed in Defendants' January 19, 2016 brief regarding the law applicable to this dispute, California law supersedes the Agreement's choice of law provision. *See* Dkt. 32. The non-competition and customer non-solicitation provisions of the Agreement, which purport to restrain McNany from engaging in the sale of medical devices and from doing business with customers he serviced while employed with Stryker, are unenforceable and void under California law.

In California, "*[e]very contract* by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." *See* Cal. Bus. & Prof. Code § 16600 (emphasis added). This law "protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal. 2008). Stated simply, "noncompetition agreements are invalid, … even if narrowly drawn, unless they fall within [certain inapplicable statutory exceptions]."[4] *Id.* at 297; *see also Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th. 564, 575 (2009*)* ("illegal noncompete agreements" also violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.).

Section 16600 not only invalidates absolute prohibitions on the exercise of a profession, trade, or business, it also invalidates restrictive covenants that prevent an employee from doing business with a former employer's customers. *See Edwards*, 189 P. 3d at 292 (affirming invalidation of employment agreement that prohibited employee from performing services for

---

[4] California Business and Professions Code Sections 16601, 16602, and 16602.5 constitute limited exceptions to Section 16600's blanket ban on non-competition agreements, none of which applies here. Those provisions apply to: (1) sales of goodwill and entire ownership interests in a business (Section 16601); (2) dissolutions and disassociations from partnerships (Section 16602); and (3) dissolution of, or termination of interests in, an LLC (Section 16602.5).

former employer's clients for 12 to 18 months); *Robinson v. Jardine Ins. Brokers Int'l Ltd.*, 856 F. Supp. 554, 559 (N.D. Cal. 1994) (where employment contract "purport[s] to prohibit Plaintiff from doing any business with Defendant's clients, regardless of who initiates contact[,] Plaintiff has demonstrated a probability of succeeding on the claim that such a restriction is invalid under § 16600"). The Agreement's non-competition and customer non-solicitation provisions are therefore void under California law and cannot be enforced against McNany.

2.     **Stryker Has Failed to Establish a Substantial Likelihood of Success On the Merits of Its Tort Claims.**

Because each of Stryker's claims is premised on the Agreement, which is invalid under California law, Stryker's tort claims against Defendant fall with the breach of contract claim against McNany and a preliminary injunction is inappropriate. *See Brock v. Consolidated Biomed. Lab*., 817 F.2d 24, 25 (6th Cir. 1987) ("If a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not."); *Bultema v. Bella Vista Group*, No. 97-CV-414, 1998 U.S. Dist. LEXIS 10451, *9 (W.D. Mich. June 15, 1998) (same).

Even if Stryker could prevail on its contract claim, it is highly doubtful that Stryker could succeed on the merits of its tort claims. For example, Stryker bases its unfair competition claim on the premise that McNany writing "Stryker" next to his name at Stanford Hospital shortly after joining Integra shows that Defendants "intentionally and misleadingly used Stryker's name to solicit Stanford Medical Center." Dkt. 24 at 21. Stryker can present no evidence that this was anything other than the innocent mistake of a recently departed employee, much less evidence of a concerted, nefarious plot by Defendants to engage in deceit and derail Stryker's business with Stanford.

C.   **Even Assuming, *Arguendo*, That Michigan Law Applies, Stryker Has Not Satisfied the Prerequisites for a Preliminary Injunction.**

Even if the Court were to apply Michigan law, in contravention of California's fundamental public policy, Stryker still cannot prevail on its request for a preliminary injunction.

1.   **Stryker Has Not Established and Cannot Establish a Likelihood of Success on the Merits.**

Non-compete agreements "are disfavored as restraints on commerce and are only enforceable to the extent they are reasonable." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 507; 741 N.W.2d 539 (2007).  Non-compete agreements in Michigan between employers and employees are governed by MCL 445.774a, which provides in pertinent part:

> (1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

MCL 445.774a.  Michigan law commands the courts to narrowly construe restrictive covenants, such that the covenants do not extend beyond an employer's "reasonable competitive business interests." *United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 408 (6th Cir. 2004); *Kelsey-Hayes Co. v. Maleki*, 765 F. Supp. 402, 406 (E.D. Mich.), vacated pursuant to settlement, 889 F. Supp. 1583 (E.D. Mich. 1991). "The reasonableness of a covenant not to compete is analyzed not in the abstract, but in the context of the employer's particular business interest and the function and knowledge of the particular employee." *Whirlpool Corp. v. Burns*, 457 F. Supp. 2d 806, 812 (W.D. Mich. 2006).  For example, it is unreasonable to place "as stringent a tie" on a

lower-level employee, such as an entry-level computer programmer, as might be placed on a system designer. *Id.* (quoting *Kelsey-Hayes, supra*, at 406).

Stryker's desire to shield itself from ordinary competition by precluding McNany from working for Integra is an insufficient basis to allow it to enforce the restrictive covenants in the Agreement. Here, the Agreement's customer non-solicitation provision prohibits McNany from:

> solicit[ing] or contact[ing], directly or through others, for the purposes of competing or interfering with any part of Stryker's business (1) any customer that purchased Stryker products at any time during the last three years of [his] employment with Stryker, (2) any prospect that received or requested a proposal to purchase Stryker B products at any time during the last three years of [his] employment with Stryker, (3) any affiliate of such customer or prospect, or (4) any of the individual customer or prospect contacts that I established during [his] employment with Stryker.

Dkt. 1 Ex. A at ¶ 4.1. This non-solicitation provision is not limited in geographic scope nor is it limited to customers or prospective customers with whom McNany had contact or about which he had knowledge. Similarly, the restriction is not in any way tied to the protection of confidential information or trade secrets. Such a provision is unreasonable and unenforceable under Michigan law. *See Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 942 (E.D. Mich. 2008) (denying a preliminary injunction where the prior employer "offered no evidence of duplicity on the part of its former employee" or the new employer and "did not establish a basis on which to claim inevitable disclosure" of confidential information); *Frontier Corp. v. Telco Commc'ns Grp., Inc.*, 965 F. Supp. 1200, 1208 (S.D. Ind. 1997) (applying Michigan law, held that the prohibition on soliciting any of the prior employer's customers was "unreasonably broad and conclude[d] that the covenant is enforceable only as to customers that [the employee himself] had successfully solicited on behalf of [the employer].").

Similarly, the non-competition provision prohibits McNany from:

> (1) work[ing] for (as an employee, consultant, contractor, agent, or otherwise) any company that competes with [Stryker NSE] in the Sales Territory for which [he] was responsible during the last year of [his] employment, or (2) becom[ing] a principal or owner of any competitor of [Stryker NSE] that does business in the Sales Territory for which [he] was responsible during the last year of [his] employment.

Dkt. 1 Ex. A at ¶ 4.2.   While limited in geographic scope, this non-competition provision prohibits McNany from employment with *any* competitor of Stryker in the territory, even where his role with the competitor includes servicing or selling products that do *not* compete with Stryker's products.   It also is not tied to the protection of confidential information or trade secrets.   Thus, this provision likewise is overbroad and unenforceable under Michigan law.[5]   *See Great Lakes Home Health Servs. v. Crissman*, No. 15-CV-11053, 2015 U.S. Dist. LEXIS 148014, *18 (E.D. Mich. Nov. 2, 2015) ("[I]t is unreasonable for [the prior employer] to prevent [the employee] from working for [the new employer] merely because of [its] status as a competitor.").

Because Stryker cannot establish a likelihood of success on the merits of its breach of contract claim, it also cannot establish a likelihood of success on the merits of its tort claims.   *See supra* at 8.

## 2.    Stryker Cannot Demonstrate Imminent, Irreparable Harm.

A particularized showing of irreparable harm is an indispensable requirement that must be established before a court may grant a preliminary injunction.   *City of Benton Harbor v. Richardson*, 429 F. Supp. 1096, 1102 (W.D. Mich. 1977); *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).   The granting of a preliminary injunction is not

---

[5] Although the Michigan statute permits a court to "blue pencil" over broad restrictive covenants, (*see* MCL 445.774a), the restrictions here are so unreasonable that doing so would require rewriting the restrictions in their entirety.

appropriate where the claimed injury is of such a nature that monetary damages will provide adequate relief. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Rehau, Inc. v. Colortech, Inc.*, No. 90-CV-57, 1991 U.S. Dist. LEXIS 8184, *3 (W.D. Mich. June 14, 1991). Moreover, "[t]he injury must be both certain and great; it must be actual, and not merely theoretical." *Merrill Lynch*, 403 F. Supp. at 343. *See also Overstreet*, 305 F.3d at 578.

Leaving aside Stryker's vague and unsupported allegations, its claimed damages boil down to two alleged harms. First, Stryker alleges that "McNany's actions have already caused Stryker to lose one Sonopet order from Stanford Children's and Stryker's business relationships with other customers are at risk." Dkt. 24 at 24. Even if these allegations were accepted as true,[6] this would constitute, according to Stryker's own allegations, a loss of "hundreds of thousands of dollars for the actual equipment and the associated disposable products" for each lost Sonopet sale. Dkt. 24 at 2. In other words, Stryker has quantified the harm it will suffer and, therefore, the alleged harm is not "irreparable." *See Psychological Services of Bloomfield, Inc.*, *supra*; *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Overstreet,* 305 F.3d at 578 ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."); *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 550 ("[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate.") (internal quotations and citations omitted); *Bright v. Exploration Logging of U.S.A., Inc.*, No. G88-489 CA7, 1988 U.S. Dist.

---

[6] Stryker has presented no admissible evidence of the rationale behind Stanford Children's decision to remove the Sonopet from the hospital and demo the CUSA, or the hospital's timeline for making a decision on any future equipment purchases. Rather, Stryker relies on inadmissible hearsay in the declaration of McNany's former supervisor as to what certain Stanford personnel allegedly told unnamed Stryker NSE representatives. *See* Dkt. 24-1 at ¶¶ 13, 18.

LEXIS 18071, *2 (W.D. Mich. June 29, 1988) (Generally, "lost income or other economic losses that can be compensated by monetary damages do not amount to irreparable injury.").

Second, Stryker's unsupported, non-specific claim that McNany is using its confidential information to "sabotage" the Sonopet Project as well as its unsupported, aspirational allegations that the sale of a Sonopet to Stanford Children's would "substantially boost[]" Stryker's goodwill in the industry and be a "boon" to sales nationwide (*see* Dkt. 24 at 7, 23), is exactly the type of "theoretical" harm that courts have refused to find supports a motion for injunctive relief. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical."); *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) (same); *Kelly Servs.*, 591 F. Supp. 2d at 942 ("It is well established that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural.") (quoting *Dunlap v. City of Southfield*, 54 Mich. App. 398, 403, 221 N.W.2d 237 (1974)); *Int'l Brotherhood of Electrical Workers, Local No. 275 v. Hall Electric Co.*, No. 90-CV-717, 1990 U.S. Dist. LEXIS 11262, *3 (W.D. Mich. Aug. 27, 1990) (denying injunctive relief where the moving party could not demonstrate that the injury was "actual, and not merely theoretical").

### 3.    The Harm to Defendants *and* Third Parties If an Injunction is Granted Far Outweighs the Harm to Stryker, If Any, In the Absence of an Injunction.

Stryker seeks to extend the TRO, which prohibits McNany from having contact with *any* of the customers or prospective customers he serviced or solicited as an employee of Stryker, regardless of whether those customers are long-term Integra customers who already own Integra products and regardless of whether the products they own are competitive with Stryker's NSE products.   Stryker's basis for its claimed harm is that McNany possesses "confidential information" regarding Stryker and its customers.  *See* Dkt. 24 at 7-8.

As set forth McNany's declaration, there simply is little to no "confidential" or "trade secret" information regarding the Sonopet or its pricing.  *See* McNany Decl. ¶ 9.  In any event, McNany has not revealed to Integra any Stryker confidential information regarding the Sonopet or any other Stryker products or business strategies, and has not used any such information when providing services to Stanford Medical Center or any other Integra customers regarding their existing Integra products and demonstrating the new CUSA for Stanford Children's.  *Id.* ¶ 10.

Instead, Stryker is attempting to interfere with McNany's chosen profession and essentially is asking the Court for protection from fair competition.  *See Kelly Servs.*, 591 F. Supp. at 941 (noting that public policy disfavors restraints on trade and interfering with a person's livelihood); *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994) appeal dismissed and remanded sub nom. *Superior Consultant Co., Inc. v. Walling*, 48 F.3d 1219 (6th Cir. 1995) ("[P]ublic policy disfavoring restraints on trade and interference with a person's livelihood warrants strict examination of noncompetition covenants.").

Contrary to Stryker's assertions otherwise, injunctive relief in favor of Stryker *will* harm both Integra as well as third parties – the customers who currently use Integra products and the patients they serve.  As outlined above, approximately ten hospitals in Integra's San Francisco 2 Territory currently own CUSA machines, including Stanford Medical Center, which owns six, and numerous other hospitals use various other Integra Neuro Sciences products that do not compete with Stryker NSE products.  *See supra* at 2.  For example, many customers use Mayfield Headrests, which serve the critical function of cranial fixation in highly sensitive neurosurgical procedures.  Similarly, Integra is also a leading supplier of various dural sealants that are frequently utilized in highly critical neurosurgical and spinal procedures.  McNany Decl. ¶ 3.  McNany's primary role with Integra is not sales; rather, it is to provide support services to

doctors and staff who are using Integra products, including providing training, answering questions as they arise, sitting in on surgeries, and making repairs or coordinating more complicated repairs to the equipment. *Id.* ¶ 2. Hiring a new sales representative and getting him or her up to speed on Integra's products likely will take months. *Id.* ¶ 11. In the interim, Integra will have to assign another employee to cover the San Francisco 2 Territory, in addition to his or her other work, which will be a drain on Integra's resources and drastically reduce the amount of time that he or she is able to spend with each customer, potentially diminishing the quality of the support services provided to the surgeons and their staff. *Id.* Thus, an injunction removing the sole Integra sales representative providing these support services in the territory will harm not only Integra's goodwill with its existing customers, but also will harm the hospitals, individual surgeons and staff who use Integra's products and the patients for whose surgical procedures the doctors use the products.

In contrast to the wide-ranging relief that Stryker seeks against both McNany and Integra, the harm Stryker will suffer in the absence of the requested relief with respect to potential lost sales is quantifiable, and the alleged harm to its customer relationships and goodwill is wholly hypothetical. Stryker appears to be maintaining its customer relationships and goodwill, as it has sales representatives servicing accounts in the territory at issue and actively working with Stanford Medical Center to purchase Stryker's products.[7]

---

[7] Indeed, by granting a TRO ten weeks after Stryker filed suit and more than three months after McNany began working for Integra, the Court has neither preserved the status quo nor prevented immediate, irreparable harm. Rather, it drastically changed the status quo to the detriment of Integra and McNany and in favor of Stryker. After more than three months of working with Integra on various existing accounts, including Stanford Medical Center, McNany now is barred from doing so, and Integra must scramble to service these accounts. Waiting months before seeking a TRO is patently unreasonable and appears to have been timed to give Stryker the unfair advantage of removing Integra's sales representative from Stanford Medical Center and other accounts, so Stryker could have unfettered access to those accounts without competition.

### 4. The Public Interest in Free and Open Competition Will Be Harmed If an Injunction Is Issued.

As evidenced by the TRO, Stryker is seeking protection from the Court from free and open competition and seeks to destroy Defendants' ability to compete with it.  Public policy supporting free and open competition mandates a finding that the requested injunction be denied.[8]  *See Whirlpool*, *supra*, at 813; *PrimePay, LLC v. Barnes*, No. 14-11838, 2015 WL 2405702, *38 (E.D. Mich. May 20, 2015) ("Filing a trade secret action to restrain legitimate competition and job mobility, needless to say, is not proper.")

### D. Even If Stryker Could Establish the Right to Injunctive Relief, the Relief Sought Is Unreasonably Broad.

The TRO that Stryker seeks to extend as a preliminary injunction prohibits McNany "and all parties in active concert or participation with him … from contacting, soliciting, or moving business of any current customer of the [Stryker NSE] business unit with whom McNany had contact or about whom McNany learned confidential information during the last thirty-six (36) months of his employment with Stryker Sales, for purposes of Stryker NSE products" (Dkt. 30 at ¶ 2), regardless of whether the customers at issue are existing Integra customers or whether the products they own and use are competitive with Stryker's NSE products.[9]  This restriction clearly is unreasonable and overbroad.  *See Great Lakes Home Health Servs.*, 2015 U.S. Dist. LEXIS 148014, *18; *Frontier Corp.*, 965 F. Supp. at 1208.

Thus, should the Court ultimately rule in Stryker's favor on its motion for preliminary injunction, Defendants request that the Court use its discretion to strike the unreasonable terms

---

[8] By enjoining McNany from having any contact with Stanford Medical Center, Stryker is not seeking to eliminate unfair competition; it is seeking to eliminate fair competition where each party has its own sales representatives on site.  By enjoining McNany from having any contact with Stanford Medical Center, Stryker seeks to hinder Integra's ability to service a longstanding customer that owns six CUSAs and uses other Integra products.

[9] Though still over broad, this restriction is narrower than the non-solicitation and non-competition provisions at issue in the Agreement.  It appears Stryker acknowledges an injunction as broad as the restrictions contained in the Agreement would be overly broad, unreasonable and unenforceable.

contained in the TRO and re-fashion the restrictive covenants to render them reasonable under the circumstances. *See Rehmann, Robson & Co. v. McMahan*, 187 Mich. App. 36, 46; 466 N.W.2d 325 (1991); *Gene Codes Corp. v. Thomson*, No. 09-14687, 2011 WL 611957, at *10 (E.D. Mich. Feb. 11, 2011) ("[P]reventing Defendant from soliciting any of Plaintiff's customers, irrespective of whether she had contact with them while working for Plaintiff, is not reasonably related to Plaintiff's legitimate business interests. The court finds that the non-solicitation clause . . . is enforceable only as to customers that Defendant herself successfully solicited on behalf of Plaintiff or with whom Defendant had built up goodwill while working for Plaintiff."); MCL 445.774a.

Further, should the Court enter an injunction, Defendants request that the Court impose a bond sufficient to protect McNany against the inevitable loss of income he will suffer during the pendency of this lawsuit and the potential loss Integra may suffer if it is unable to fully service its accounts and otherwise engage in its business. The $5,000 bond that Stryker proposed in its initial proposed order (*see* Dkt. 24-3 at ¶ 35), is woefully insufficient.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Stryker's request for injunctive relief be denied.

Dated: January 22, 2016                    Respectfully submitted,

                                            JOHNNY MCNANY and INTEGRA
                                            LIFESCIENCES CORPORATION


                                            By:  */s/ Stephanie L. Sweitzer*
                                                One of Their Attorneys

Thomas F. Hurka
Stephanie L. Sweitzer (P66376)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
+1.312.324.1000
thurka@morganlewis.com
ssweitzer@morganlewis.com

Sandra J. Densham
PLUNKETT COONEY
Bridgewater Place
333 Bridge N.W., Suite 530
Grand Rapids, MI 49504
+1.616.752.4600
sdensham@plunkettcooney.com

*Attorneys for Defendants*