IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **STRYKER SALES CORPORATION**, a Michigan corporation;<br><br>        Plaintiffs,<br><br>v.<br><br>**JOHNNY MCNANY,** an individual; and **INTEGRA LIFESCIENCES CORPORATION,** a Delaware corporation;<br><br>        **Defendants.** | Case No. 15-cv-01110-JTN-ESC<br><br>Hon. Janet T. Neff |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE

Michael D. Wexler
Jordan P. Vick
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603
mwexler@seyfarth.com
jvick@seyfarth.com
+1.312.460.5000

David J. Gass
D. Andrew Portinga
MILLER JOHNSON
250 Monroe Ave. NW
Ste. 800
Grand Rapids, MI 49503-2250
portingaa@millerjohnson.com
gassd@millerjohnson.com
+1.269.226.2958

*Attorneys for Plaintiff Stryker Sales Corporation*

**INTRODUCTION**

Defendant Johnny McNany ("McNany") is violating this Court's February 12, 2016 Preliminary Injunction Order and thus he and Integra Lifesciences Corporation ("Integra"), should be held in contempt of this Court's Order. Much like McNany did in the past when he interfered with Stryker's trial of the Sonopet at Stanford University Hospitals, McNany is now interfering with Stryker's trial of the Sonopet at Salinas Valley Memorial Hospital. Plaintiff Stryker Sales Corporation ("Stryker") filed this lawsuit because Defendants McNany and Integra, his new employer, are brazenly attempting to sabotage the customer relationships, competitive advantage and goodwill that Stryker invested substantial resources to build. After filing this lawsuit, Stryker learned that McNany was marketing and promoting Integra's CUSA Excel System ("CUSA"), which directly competes with Stryker's own ultrasonic aspirator, Sonopet ® Ultrasonic Aspirator System ("Sonopet"), to the very customers McNany used to service on behalf of Stryker. Specifically, Defendants were seeking to interfere with an ongoing surgical trial of the Sonopet at the hospitals and medical centers associated with Stanford University ("Stanford Sonopet Project"), including Lucile Packard's Children's Hospital ("Stanford Children's). Defendants were successful in convincing Stanford Children's to stop trialing the Sonopet and to instead trial the CUSA. Because this was a blatant violation of the post-employment obligations McNany owes Stryker, Stryker demanded that Defendants stop. When Defendants refused, Stryker was compelled to move for a Temporary Restraining Order and Preliminary Injunction. (Memo. In Support of Motion for TRO, Dkt. # 24, p. 2.)

After full briefing and an evidentiary hearing, this Court entered a Joint Preliminary Injunction Order on February 12, 2016 prohibiting McNany, among other things, from (1) "conducting any business on behalf of Integra at Stanford Hospitals & Clinics, which consists of Stanford University Hospital, Stanford Medical Center, Lucille Packard Children's Hospital, and the VA Hospital & Medical Center in Palto Alto, CA including but not limited to contacting, soliciting, or moving the business of any of these entities;" and (2) "contacting, soliciting, marketing, selling, servicing, or

providing training or information about Integra's CUSA machines or systems and related disposables to any current or prospective customer of the Stryker Neurosurgical, Spine & ENT ("Stryker NSE") business unit in McNany's former Stryker territory, known as Bay Area South NSE as pictured on the map attached as Exhibit A." (Joint PI Order, Dkt. # 39.)

Unfortunately, not even this Court's entry of a Preliminary Injunction is sufficient to deter Defendants unlawful attempts to sabotage Stryker's customer relationships. On June 22, 2016 - more than four months after the entry of the Order enjoining him from doing so - McNany is once again marketing CUSA products to his former Stryker customers and attempting to interfere with a trial of a Sonopet which was being used in its first surgery on June 23, 2016, one day after his violation of this Court's Order. This time to Salinas Valley Memorial Hospital in Salinas, California ("Salinas Valley"), which is within the Bay Area South NSE territory and, therefore, squarely within the corners of this Court's Preliminary Injunction Order. This Court should enter an Order directing McNany to show cause as to why he should not be held in civil contempt for violation of the Joint Preliminary Injunction Order and, if McNany is unable to do so, this Court should find McNany in civil contempt and extend the terms of the previously-entered Joint Preliminary Injunction Order.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff will not restate the entire factual history of this matter for purposes of this Motion as this Court has already heard extensive testimony and ruled upon many of those issues in connection with Stryker's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. The sole issue presented in this Motion is whether McNany is currently violating the terms of the Preliminary Injunction put in place by this Court.

McNany was hired by Stryker in July 2006 as a Sales Representative for Stryker's Neurosurgical, Spine & ENT business unit ("Stryker NSE") in its "Bay Area South" territory, which includes San Jose, Santa Clara, Palo Alto, Stanford, and other areas along the Pacific Coast from South

2

of San Francisco to North of Los Angeles. McNany was the exclusive Stryker NSE Sales Representative assigned to this territory and held this position for over nine (9) years, since the beginning of his employment with Stryker. One of the products that McNany sold for Stryker was the Sonopet, as well as the wide range of disposable products which are designed to be used with the Sonopet, including disposable tips. McNany abruptly resigned from Stryker on September 15, 2015 and soon thereafter went to work for Defendant Integra, which manufactures a competing ultrasonic aspirator called the CUSA EXcel® System ("CUSA").

McNany's agreement with Stryker ("the Agreement") contained reasonable post-employment restrictive covenants, one of which was that he would not:

> [S]olicit or contact, directly or through others, for the purpose of competing or interfering with any part of Stryker's business (1) any customer that purchased Stryker products at any time during the last three years of my employment with Stryker, (2) any prospect that received or requested a proposal to purchase Stryker B products at any time during the last three years of my employment with Stryker, (3) any affiliate of such customer or prospect, or (4) any of the individual customer or prospect contacts that I established during my employment with Stryker.

(Agreement, Dkt. # 1-1, p. 4.) McNany also specifically agreed that he would not work for a Stryker NSE competitor in his Stryker-assigned sales territory for one year following the termination of his employment for any reason. (*Id.*). When Stryker discovered that McNany was employed by Integra and violating the terms of the Agreement, it filed suit on October 28, 2015. (Complaint, Dkt. # 1.) When McNany continued to violate the Agreement by soliciting his former Stryker customers and threatened to sabotage a significant clinical trial of the Sonopet at Stanford Hospital, Stryker moved for a temporary restraining order and preliminary injunctive relief on January 13, 2016. (Emergency Mot. for TRO and PI, Dkt. # 23.)

This Court entered a Temporary Restraining Order on January 15, 2016 (Dkt. # 30) and held a preliminary injunction evidentiary hearing on January 28, 2016. (Dkt. # 37.) At the conclusion of that hearing, this Court found that McNany had admittedly violated the Agreement, that Michigan law

3

would govern this dispute in keeping with the choice-of-law provision in the Agreement, that the Agreement was enforceable under Michigan law, and that Defendants should be preliminarily enjoined from certain wrongful conduct, including but not limited to McNany's solicitation of Stryker customers in his former sales territory. A Joint Preliminary Injunction Order, prepared by the parties' counsel and submitted to this Court for approval, was entered on February 12, 2016. (Dkt. # 39.)

The Joint Preliminary Injunction Order states, in part:

McNany and all parties in active concert or participation with him who receive actual notice of this Order by personal service or otherwise are preliminarily enjoined from contacting, soliciting, marketing, selling, servicing, or providing training or information about Integra's CUSA machines or systems and related disposables to any current or prospective customer of the Stryker Neurosurgical, Spine & ENT ("Stryker NSE") business unit in McNany's former Stryker territory, known as Bay Area South NSE as pictured on the map attached as Exhibit A…

(Joint PI Order, Dkt. #39, pp. 3, 6.) Defendants filed an interlocutory appeal of this Court's Joint Preliminary Injunction Order on March 11, 2016. (Not. of Appeal, Dkt. # 45.)

**MCNANY'S VIOLATION OF THE JOINT PRELIMINARY INJUNCTION ORDER**

After McNany's resignation, Stryker assigned Raymond Gorman as the Stryker NSE Sales Representative for McNany's former "Bay Area South NSE" sales territory. [Declaration of Raymond Gorman ¶¶ 2, 3 ("Gorman Decl.") attached as **Exhibit A**.] Mr. Gorman services the exact same "Bay Area South NSE" sales territory that McNany was assigned at the time of his resignation from Stryker, and which is shown on the map attached to the Joint Preliminary Injunction Order. (*Id.* ¶¶ 3, 13; PI Order, Dkt. # 39 at p. 6.) Included within the Bay South NSE sales territory is Salinas Valley. (Gorman Decl. ¶ 13; PI Order, Dkt. # 39, p. 6.)

Stryker is currently in the middle of an in-hospital surgical trial of the Sonopet at Salinas Valley which began on June 15, 2016 ("Salinas Sonopet Project"). (Gorman Decl. ¶ 4.) The Salinas Sonopet Project was not scheduled to begin until later this year, but was moved up to June at the request of Salinas Valley after their CUSA machine malfunctioned. (*Id.*) Mr. Gorman is leading the

Salinas Sonopet Project on behalf of Stryker and Stryker anticipates selling a Sonopet console and two handpieces to Salinas Valley upon the successful conclusion of the Salinas Sonopet Project. (Gorman Decl. ¶ 12.) While Salinas Valley has not finalized any Sonopet orders yet, it submitted Stryker's quote for the anticipated purchase to the hospital's budgeting department for approval, and the Stryker quote was the only ultrasonic aspirator quote submitted to budgeting for approval. (*Id.*)

On June 23, 2016, the first surgical case in which the Sonopet could be used, was conducted at Salinas Valley, and Mr. Gorman travelled to the hospital that day to observe the surgery and answer any questions that the surgeons might have regarding the Sonopet. (Gorman Decl. ¶ 5.) Before observing the surgery, Mr. Gorman spoke to Michael Aquino, the Robotic Surgery Coordinator at Salinas Valley and Mr. Gorman's main point of contact for the Sonopet project, about the Sonopet. (Gorman Decl. ¶¶ 5-6.) During their conversation, Mr. Aquino asked Mr. Gorman if Stryker offered a serrated tip "like the CUSA" for use with the Sonopet, specifically for the removal of fibrous tumors. (*Id.*). Mr. Gorman stated that he was asking about that product because McNany had been on site at Salinas Valley the day before the first use of the Sonopet in surgery at Salinas Valley - June 22, 2016 - to demonstrate a serrated, disposable tip for use with the CUSA. (*Id.*) Mr. Aquino then showed Mr. Gorman the specific product that McNany had left with Aquino the day beforehand, which Mr. Gorman recognized as an Integra disposable product designed for use with the CUSA. (Gorman Decl. ¶ 9.) When Mr. Aquino told McNany that Salinas Valley would be going forward with the Sonopet trial, McNany told Mr. Aquino to call him if the Sonopet trial "did not work out." (Gorman Decl. ¶ 10.) Mr. Aquino stated that he had spoken to McNany several weeks beforehand, and that McNany appeared nervous because of the upcoming Sonopet trial at Salinas Valley and the fact that McNany was prohibited from selling competing CUSA products to Salinas Valley. (Gorman Decl. ¶ 11.) Mr. Aquino had previously stated that he had moved up the Salinas Sonopet Project because he "could not

wait" until September of 2016, when McNany might be able to trial the CUSA at Salinas Valley, because Salinas Valley was in immediate need of an ultrasonic aspirator.[1] (Gorman Decl. ¶ 11.)

McNany's actions at Salinas Valley are startlingly similar to his wrongful conduct in connection with the Stanford Sonopet Project, which precipitated the filing of this lawsuit and Plaintiff's motion for preliminary injunctive relief. While the Stanford Sonopet Project was ongoing, but before orders for the Sonopet had been finalized, McNany went to Stanford to interfere on behalf of Integra. (1/28/16 Hrg. Tr., Dkt. #37, p. 107.) McNany is now doing the same thing at Salinas Valley - this time in violation of the Preliminary Injunction. McNany, and Integra for that matter, are in clear contempt of this Court's Order and must be held accountable.

## ARGUMENT

In order to hold a party in contempt, there must be a showing by clear and convincing evidence that the party has violated a definite and specific court order requiring the party to perform a particular act or to refrain from performing a particular act. *Roman v. Korson*, 307 F. Supp. 2d 908, 915 (W.D. Mich. 2004) *citing Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996), *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504–06 (8th Cir. 2000). *See also In re Walker,* 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001). Willfulness is not an element of civil contempt and need not be shown. *Rolex*, 74 F.3d at 720.

---

[1] In accordance with the requirements of Local Rule 7.1(d), the undersigned counsel contacted counsel for Defendants on June 27, 2016 to inform them that it intended to file a Motion for an Order to Show Cause and the basis for that Motion. Counsel for Defendants responded on June 27, 2016 and claimed that while McNany had been present for the June 22, 2016 conversation at Salinas Valley described herein, McNany was there with his supervisor and had excused himself from the conversation while the CUSA was being discussed. After Defendants' counsel's response, Raymond Gorman contacted Mr. Aquino again on June 28, 2016. Mr. Aquino stated to Mr. Gorman that while another Integra sales representative had been present with McNany for the June 22, 2016 conversation, McNany had not excused himself from the conversation but had stood next to his colleague for the entirety of the conversation. (Gorman Decl. ¶ 12.) Further, as discussed above, McNany instructed Mr. Aquino to call him if the Sonopet trial "did not work out." (Gorman Decl. ¶ 10.)

Once a *prima facie* violation is shown, the burden shifts to the respondent to either rebut the showing or to establish a defense such as inability to comply. *Rolex*, 74 F.3d at 720; *Chicago Truck Drivers,* 207 F.3d at 505–06. The fact that Defendants' interlocutory appeal is still pending before the Sixth Circuit Court of Appeals has no impact on this Court's ability to find Defendant McNany in civil contempt. District Courts retain their jurisdiction to enforce prior orders, even while those matters are being appealed, as long as those prior orders have not been stayed or vacated. *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 589 (6th Cir. 1987).

A. **The Joint Preliminary Injunction Order Clearly and Specifically Defines What Conduct McNany is Enjoined from Undertaking in his Former Sales Territory.**

The terms of the Joint Preliminary Injunction Order are clear as to what activities McNany is enjoined from undertaking. McNany is enjoined from "contacting, soliciting, marketing, selling, servicing, or providing training or information about Integra's CUSA machines or systems and related disposables to any current or prospective customer of the ["Stryker NSE"] business unit in McNany's former Stryker territory, known as Bay Area South NSE as pictured on the map attached as Exhibit A." (Joint PI Order, Dkt. #39, p. 3.) While McNany's anticipated response will be that he was only present at Salinas Valley while another Integra salesperson marketed the CUSA disposable tip, the Joint Preliminary Injunction Order specifically forbids "all parties **in active concert or participation** with [McNany]…" from conducting such activities, and specifically states that "Integra and its employees and agents may not **directly or indirectly work in concert or participation with McNany** when conducting such business. (Joint PI Order, Dkt. #39, p. 3.) (emphasis added). Moreover, and as addressed in the attached declaration, the hospital employee in question stated that McNany did *not* excuse himself from a conversation involving disposable tips for the CUSA, but remained with another Integra salesperson while those products were being marketed to Salinas Valley. Further, McNany actively participated in that conversation by instructing Mr. Aquino to call him if the Sonopet trial "did not work out." (Gorman Decl. ¶ 10.)

The terms of the Joint Preliminary Injunction Order were agreed to Defendants' counsel before they were submitted to this Court. If Defendants were not already intimately familiar with the boundaries of McNany's sales territory at Stryker after he worked it for nine years, the map attached to the Joint Preliminary Injunction Order as Exhibit "A" clearly indicates the areas where McNany is enjoined from "contacting, soliciting, marketing, [or] selling…"the CUSA machine, or any "systems and related disposables" for the CUSA to Stryker's current or prospective customers, and where Integra was enjoined from working in concert with McNany on those activities. The specific materials that McNany was marketing to Salinas Valley (either on his own or in concert with another Integra employee) - the serrated tip for the CUSA system - are squarely within the category of "related disposables" for the CUSA system that compete with disposables for the Sonopet. (Gorman Decl. ¶¶ 8, 9.) As such, there can be no dispute that the Joint Preliminary Injunction Order is clear as to what McNany and Integra were enjoined from doing, and where they was enjoined from doing it.

**B.     Stryker Has Shown Clear and Convincing Evidence that McNany is Knowingly Violating the Joint Preliminary Injunction Order by Marketing the CUSA and Related Disposables at Salinas Valley.**

As demonstrated in the attached declaration of Raymond Gorman, McNany is clearly violating the terms of the Preliminary Injunction Order by contacting and attempting to sell competing CUSA disposable products to potential Stryker customers within the Bay Area South NSE sales territory. (Gorman Decl. ¶¶ 7-13.) Mr. Gorman was told in no uncertain terms that McNany had been on site at Salinas Valley attempting to market disposable tips for the CUSA, while he was aware of an ongoing Sonopet trial in the hospital. (*Id.*) Mr. Gorman was shown the materials that McNany left behind at Salinas Valley, and identified them as competing CUSA products. (*Id.*) McNany blatantly solicited a customer that McNany worked with previously while at Stryker, and which he knows to be currently working with Stryker,.by being on-site at Salinas Valley during a discussion regarding the CUSA, demonstrating a CUSA tip, soliciting Salinas Valley personnel and instructing that Salinas Valley

8

should call McNany if the Sonopet "did not work", (*Id.*) Finally, Salinas Valley is within the boundaries of the Bay Area South NSE sales territory in which McNany is enjoined from competing with Stryker customers. (Gorman Decl. ¶ 13; PI Order, Dkt. # 39, p. 6.)

While there is no requirement that McNany or Integra's actions be willful to qualify as civil contempt (*Rolex*, 74 F.3d at 720), the evidence indicates that McNany is well aware that he is flaunting this Court's Order. Mr. Aquino indicated that McNany appeared nervous several weeks ago because of the upcoming Sonopet trial at Salinas Valley and the fact that he was enjoined from marketing competing Integra products. McNany knew that there was a Sonopet trial ongoing at Salinas Valley, and went so far as to tell Mr. Aquino to call McNany in the event that the Sonopet "did not work." Every indication is that McNany's position today remains what it was at the preliminary injunction hearing: that he can violate the terms of his Agreement and shockingly this Court's Order without fear of recourse. McNany is wrong and should be ordered to show cause and then held in contempt.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Stryker Sales Corporation respectfully requests that this Court enter an Order (1) directing Defendants Johnny McNany and Integra to show cause why each should not be held in civil contempt for violating this Court's February 12, 2016 Joint Preliminary Injunction Order; (2) prohibiting McNany from conducting any business on behalf of Integra at any of the hospitals or medical centers within the Bay Area South NSE territory, as pictured on Exhibit A to the Joint Preliminary Injunction Order; and (3) extending the length of the preliminary injunction to June 30, 2017 in light of Defendants' continuing violations of the terms of that Order and the contractual post-employment obligations he owes to Stryker.

**Dated: July 5, 2016**                     Respectfully submitted,

                                            **STRYKER SALES CORPORATION,**


                                            By: /s/ Michael D. Wexler
                                                 One of Its Attorneys


Michael D. Wexler
Jordan P. Vick
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603
mwexler@seyfarth.com
jvick@seyfarth.com
+1.312.460.5000

David J. Gass
D. Andrew Portinga
MILLER JOHNSON
250 Monroe Ave. NW
Ste. 800
Grand Rapids, MI 49503-2250
portingaa@millerjohnson.com
gassd@millerjohnson.com
+1.269.226.2958

*Attorneys for Plaintiff Stryker Sales Corporation*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing to be served on all counsel of record through the ECF Filing System.

/s/ Michael D. Wexler